RECEIVED

DEC 09 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**WILLIE FRY and PHALLON MURRY,**
**as Parents and Next Friends of L.H., a minor**                    **PLAINTIFFS**

**VS.**                         **CIVIL ACTION NO.** __3:25-cv-352-DMB-RP__

**SHARKNINJA OPERATING, LLC**                    **DEFENDANT**

## COMPLAINT
### (Jury Trial Requested)

COME NOW, Plaintiffs, Willie Fry and Phallon Murry, as parents and next friends of L.H., their minor child, and hereby file this Complaint for damages. In support thereof, Plaintiffs submit the following:

## PARTIES

1.     L.H. is a minor resident and citizen of Mississippi, domiciled in Lafayette County.

2.     Willie Fry, L.H.'s father, natural and legal guardian, and next friend, is an adult resident citizen of Mississippi, domiciled in Tallahatchie County.

3.     Phallon Murry, L.H.'s mother, natural and legal guardian, and next friend, is an adult resident citizen of Mississippi, domiciled in Lafayette County.

4.     SharkNinja Operating, LLC ("Defendant" or "SharkNinja") is a Delaware limited liability company with its principal place of business located at 89 A Street, Suite 100, Needham, Massachusetts 02494. Its sole member is SharkNinja Midco, LLC, a Delaware limited liability company with its principal place of business in Massachusetts. The sole member of SharkNinja Midco, LLC is SharkNinja Appliance, LLC, also a Delaware limited liability company with its principal place of business in Massachusetts. The sole member of SharkNinja Appliance, LLC is SharkNinja Appliance UK Holdco Limited—a private limited company organized under the laws

of England and Wales with its principal place of business in Leeds, England. SharkNinja Appliance UK Holdco Limited is wholly owned by SharkNinja Global SPV, Ltd., an exempted company incorporated in the Cayman Islands. SharkNinja Global SPV, Ltd. is wholly owned by SharkNinja, Inc., a publicly held exempted company incorporated in the Cayman Islands.

5.     SharkNinja may be served with process via its Registered Agent, CT Corporation System, located at 8927 Lorraine Rd., Suite 204-A, Gulfport, Mississippi 39503.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the parties pursuant to Miss. Code Ann. § 13-3-57, as SharkNinja committed a tort, in whole or in part, in Mississippi against a resident of Mississippi, and the injury from SharkNinja's defective product occurred in Mississippi.

7.     SharkNinja also possesses sufficient minimum contacts with Mississippi to satisfy the Due Process Clause of the Fourteenth Amendment, as it purposefully availed itself of, and directed activities at, Mississippi and its market through its intentional, continuous promotion, marketing, distribution, and sales of the subject product in Mississippi, such that it could reasonably anticipate being sued here. And, this litigation results from injuries that occurred in Mississippi and arise out of or otherwise relate to SharkNinja's activities in Mississippi, such that the Court's exercise of personal jurisdiction is fair and reasonable, especially given Mississippi's strong, clear interest in providing a forum for a severely injured resident who sustained significant and permanent bodily injuries within its borders while using a defective and unreasonably dangerous product that SharkNinja designed, sold, and introduced (repeatedly) into Mississippi's market.

2

8.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332(a), as the matter in controversy in this action exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim, including L.H.'s injuries, occurred in this judicial district.

## BACKGROUND

10.     SharkNinja designs, manufacturers, markets, imports, distributes, and sells a wide range of consumer kitchen products, among which are the Ninja "Foodi" OP300-Series Pressure Cookers, including the specific OP302-Series at issue in this case. *See* Photos of Subject Pressure Cooker (attached as **Exhibit 1**).

11.     Until recently, SharkNinja maintained and publicly touted the "quality and safety" of its pressure cookers, expressly warranting in its materials, including the product's manual, that the lids on the units could not open or otherwise come detached while in use. *See* Owner's Guide, Ninja "Foodi" OP300-Series Pressure Cooker, at pp. 15, 22 (attached as **Exhibit 2**) ("**NOTE:** The pressure lid will not unlock until the unit is completely depressurized.") (emphasis in original). Despite these affirmations by SharkNinja, the pressure-cooking lid safety mechanisms on the units were prone to catastrophic failure that allowed the pressure cookers to open while still pressurized and forcefully eject scalding hot liquid, super-heated steam, and any contents inside the pressure cookers onto the user—a dangerous, concealed condition about which SharkNinja knew or should have known[1] and that the regular user would not realize exists when using the product as intended.

---

[1] *See* United States Consumer Product Safety Commission Incident Report, Feb. 10, 2020 (attached as **Exhibit 3**) (wherein a 31-year-old female reported to both the CPSC and SharkNinja that her OP300-Series Ninja Pressure Cooker "exploded" during routine use, resulting in second degree burns and emergency medical treatment); *see also* United States Consumer Product Safety Commission Incident Report, Feb. 21, 2020 (attached as **Exhibit 4**)

12.     Additionally, SharkNinja, at all relevant times, failed to provide adequate warnings or instructions regarding the true extent of the personal injury risks and burn hazards associated with the pressure cooker's faulty and poorly designed lid safety system. The ordinary user would not realize these dangers when using the product as intended (particularly given the representations made by SharkNinja regarding the inability of the lid to come open while in use). Further, because this dangerous condition was not open and obvious to the ordinary user, SharkNinja's failure to warn or provide adequate warnings of the hazards posed by this dangerous, concealed condition rendered the product unreasonably dangerous and defective.

13.     In particular, the pressure-cooking lids on the units can be opened while the cooker is pressurized, resulting in serious bodily injuries from the forceful ejection of scalding hot liquids, super-heated steam, and any contents inside the pressure cooker onto the user. The subject cooker can also pressurize when the lid is unlocked, causing the lid to inadvertently and forcefully detach (or "explode") and result in serious, disfiguring burns and other bodily injuries. Again, this is despite representations from SharkNinja that, "[a]s the unit pressurizes, the lid will lock as a safety measure, and it will not unlock until pressure is released." **Exhibit 2**, at pp. 15, 22 ("As a safety feature, the pressure lid will not unlock until the unit is completely depressurized.").

14.     On May 1, 2025, after having received more than **100 reports** of burn injuries, including more than **50 reports** of second and third-degree burns to consumers' bodies,[2] and at least **26 lawsuits** filed against it as a result of same, on or about May 1, 2025, "[i]n cooperation with the U.S. Consumer Product Safety Commission ("CPSC") and Health Canada," SharkNinja

---

(wherein a 41-year-old female reported that the lid on her OP300-Series Ninja Pressure Cooker "exploded off like a bomb sending hot liquid all over [her]," causing second-degree burns that left her with permanent scarring all over her lower abdomen.).

[2] *See id.*

"voluntarily recall[ed] the Ninja Foodi OP300-Series Pressure Cookers." *Product Recall: Ninja "Foodi" OP300-Series Pressure Cookers*, SharkNinja Operating, LLC, May 1, 2025 (attached as **Exhibit 5**). Therein, SharkNinja specifically acknowledged that "the pressure-cooking lids of these cookers can be opened while the cooker is pressurized, resulting in burn injuries from hot contents." U.S. Consumer Prod. Safety Comm'n, News Release, *SharkNinja Recalls 1.8 Million Foodi Multi-Function Pressure Cookers Due to Burn Hazard; Serious Burn Injuries Reported*, May 1, 2025 (attached as **Exhibit 6**) ("**Hazard**: The pressure-cooking lid can be opened during use, causing hot contents to escape, posing a risk of burn injuries to consumers.") (emphasis in original).

15.     The defect that caused SharkNinja to recall the subject pressure cookers was, upon information and belief, the failure of the safety mechanism within the product to prevent the lid from being opened while the unit was still pressurized. Additionally, the design of the pressure cookers allowed for misplacement of the lid on the unit of the pressure cooker, preventing proper engagement and locking—i.e., the lid can be attached in orientations other than the correct lockable orientation.

## FACTS

16.     On or about February 17, 2025, L.H. (age 16) was using a Ninja "Foodi" OP302-Series Pressure Cooker designed, manufactured, imported, distributed and sold by SharkNinja to prepare a meal when the lid on the pressure cooker suddenly and without warning explosively detached from the unit, expelling super-heated steam, scalding water, and heated contents onto his lower extremities. This incident resulted in severe, disfiguring second-degree burns[3] that required

---

[3] *See* Photos of Injuries (attached as **Exhibit 7**).

immediate emergency medical treatment, subsequent surgery, and extensive physical and rehabilitation therapy.

17. As a direct result of the defective and unreasonably dangerous condition of the SharkNinja pressure cooker, L.H. suffered severe and permanent bodily injuries and damages, including, but not limited to, physical pain and suffering and chronic discomfort; debilitating mental and emotional distress and embarrassment caused by the physical and social consequences of his injuries; permanent and visible disfigurement and scarring to his legs, thighs, and ankles; and loss of enjoyment of life due to disruptions to his daily life and a diminished ability to engage in hobbies, sports, and activities that he otherwise would have participated. For example, L.H., an outstanding student-athlete and all-star running back, was forced to miss spring football, track and field championships, and powerlifting.

18. Accordingly, Plaintiffs seek compensatory damages for L.H.'s past, present, and future medical expenses, pain and suffering, emotional distress, mental anguish, disfigurement, inconvenience, loss of enjoyment of life, humiliation and embarrassment, and disability. Given SharkNinja's knowledge of the dangerous conditions and burn hazards posed by its Ninja "Foodi" OP302-Series Pressure Cookers **as early as February 2020**—and its failure to take any measures or make any efforts to recall the product or otherwise provide any notice related to the concealed burn hazard posed by its defective pressure cooker and lid-locking "safety feature" prior to L.H.'s traumatic injury **in February 2025**—Plaintiffs also seek punitive damages and attorneys fees in an amount to be determined by the jury and as supported by the facts of the case as it proceeds.

## <u>COUNT I – DESIGN DEFECT</u>

19. Plaintiffs repeat and allege the allegations contained in ¶¶ 1-18 above, as if set forth fully herein, specifically ¶ 15.

6

20.     SharkNinja is liable as a seller and designer under Miss. Code Ann. § 11-1-63, i.e., the Mississippi Product Liability Act.

21.     At all relevant times, SharkNinja exercised substantial control over the design, testing, labeling, and packaging of the Ninja "Foodi" OP302-Series Pressure Cooker at issue.

22.     At the time the subject pressure cooker left SharkNinja's possession and control, it knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the defective and unreasonably dangerous conditions of the product that caused the injuries for which recovery herein is sought. Specifically, the pressure cooker had a faulty and negligently designed "safety system" that, despite SharkNinja's representations, allowed the lid to come open (or failed to prevent the lid from coming open) and explosively detach from the unit while still pressurized, resulting in the forceful ejection of scalding hot liquid, super-heated steam, and the heated contents of the pressure cooker onto the user—a dangerous, concealed condition about which ordinary users like L.H. would have no knowledge, thereby rendering the product unreasonably dangerous and defective.

23.     The design allowed for misplacement of the lid on the unit of the pressure cooker, preventing proper engagement and locking. Upon information and belief, the lid can be attached in orientation other than the correct lockable orientation.

24.     Not only did the pressure cooker fail to function as expected, but there existed a feasible design alternative (as evidenced, in part, by the replacement lid offered by SharkNinja in its recent recall of the pressure cookers) that would have to a reasonable probability prevented L.H.'s injuries, while not impairing the product's utility or desirability to consumers. Indeed, upon information and belief, such design alternatives are currently marketed by SharkNinja.

25. The pressure cooker's defective and unreasonably dangerous condition proximately caused the damages for which recovery is sought.

26. As a direct and proximate result of the defect in the design of the pressure cooker and its lid-locking safety system by SharkNinja, L.H. suffered severe and permanent damages, including, but not limited to, past, present, and future medical costs and expenses, physical pain and suffering, emotional distress, mental anguish, disfigurement, inconvenience, loss of enjoyment of life, humiliation and embarrassment, and disability.

## COUNT II – INADEQUATE WARNINGS / FAILURE TO WARN

27. Plaintiffs repeat and allege the allegations contained in ¶¶ 1-26 above, as if set forth fully herein.

28. At the time the subject pressure cooker left SharkNinja's possession and control, it was defective because it failed to contain adequate warnings or instructions regarding the true extent of the safety risks and burn hazards associated with the pressure cooker's faulty and poorly designed lid safety system—specifically, a flaw in the design of the lids that allowed the lid to come open and violently detach from the unit during pressure-cooking, causing scalding hot liquid, super-heated steam, and contents inside the unit to forcefully explode out of the pressure cooker and onto the user.

29. At the time the subject pressure cooker left SharkNinja's possession and control, it knew, or in light of reasonably available knowledge should have known, about the dangers that caused the damages for which Plaintiffs seek recovery—and that an ordinary consumer, like L.H., using the pressure cooker as intended, would not realize these dangers.

30. Absent adequate warnings, an ordinary user or consumer would not (as evidenced here) realize the dangers associated with the operation and use of the Ninga "Foodi" OP302-Series

Pressure Cooker, as its defective and unreasonably dangerous condition was not open and obvious to the ordinary user.

31.     Moreover, upon information and belief, SharkNinja exercised substantial control over an aspect of the pressure cooker's packaging and labeling that caused the harm for which recovery of damages is sought.

32.     SharkNinja's failure to adequately warn users of the burn hazards and risks of bodily injuries associated with the pressure cooker's faulty and poorly designed lid safety system—or the potential for scalding hot liquid, super-heated steam, and any contents inside the unit to forcefully explode out of the pressure cooker and onto the user—rendered the product unreasonably dangerous and defective, which proximately caused the damages for which recovery is sought.

33.     As a direct and proximate result of SharkNinja's failure to provide adequate warnings regarding the ability of the lid to come open and explosively detach from the unit while still pressurized, resulting in the forceful ejection of scalding hot liquid, super-heated steam, and the heated contents of the pressure cooker onto the user, and the acts and omissions of SharkNinja as pled herein, L.H. has suffered severe and permanent damages, including, but not limited to, past, present, and future medical expenses, physical pain and suffering, emotional distress, mental anguish, disfigurement, inconvenience, loss of enjoyment of life, humiliation and embarrassment, and disability.

## DAMAGES

34.     Plaintiffs hereby adopt and incorporate the allegations contained and set forth in ¶¶ 1-33 of this Complaint.

35. As a direct and proximate result of the defective and unreasonably dangerous conditions of the Ninja "Foodi" OP302-Series Pressure Cooker, and the acts and omission of SharkNinja as pled herein, L.H. has suffered and thus hereby seeks compensatory damages for the following:

a. past, present, and future medical costs and expenses;

b. temporary and permanent disfigurement;

c. disability;

d. physical pain and suffering;

e. mental anguish and emotional distress;

f. past, present, and future loss of enjoyment of life;

g. humiliation and embarrassment; and

h. any and all other special damages that discovery in this matter may warrant.

## JURY TRIAL

36. Plaintiffs request a trial by jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment of, from, and against SharkNinja in an amount to be determined by the jury:

(i) For past, present, and future medical costs and expenses, disfigurement, physical pain and suffering, emotional distress, mental anguish, disability, loss of enjoyment of life, and humiliation and embarrassment;

(ii) For post-judgment interest at 8% per annum; and/or

(iii) For any and all further relief, both at law and at equity, to which this Court, in its discretion, may find Plaintiffs to be justly entitled, including other special damages to be proven at trial.

**RESPECTFULLY SUBMITTED**, on this the 3rd day of December, 2025.

Plaintiffs, Willie Fry and Phallon Murry, as Parents and Next Friends of L.H., a Minor

By: _____

David Baria (MS Bar. No. 8646)
Brannon L. Berry (MS Bar No. 104811)
COSMICH, SIMMONS & BROWN, PLLC
100 Vision Drive, Suite 200
Jackson, Mississippi 39211
544 Main Street
Bay St. Louis, Mississippi 39520
Direct: (601) 519-0328
Email: david.baria@cs-law.com
Email: brannon.berry@cs-law.com

11